ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| SYLVIA RAMÍREZ CEBOLLERO; ANA AMELIA CRUZ RAMÍREZ; ANA MELÉNDEZ CRUZ<br>Apelante<br>v.<br><br>FIRSTBANK<br>Apelado | KLAN202401150 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2022CV06013<br><br>Sobre: Incumplimiento de contrato |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Comparecen la señora Sylvia Ramírez Cebollero, la señora Ana Amelia Cruz Ramírez y la señora Ana Meléndez Cruz (apelantes) y solicitan la revocación de la *Sentencia* que el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) notificó, el 20 de noviembre de 2024. En esta, el TPI desestimó la *Demanda* de epígrafe, con perjuicio.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

**I.**

El 7 de julio de 2022, la señora Sylvia Ramírez Cebollero (señora Ramírez Cebollero o viuda), la señora Ana Amelia Cruz Ramírez (señora Cruz Ramírez o hija) y la señora Ana Meléndez Cruz (señora Meléndez Cruz o nieta del señor Lorenzo Cruz Ibarra) incoaron una *Demanda* en contra de FirstBank Puerto Rico (apelado o FirstBank). En esta, reclamaron el reembolso de las cantidades depositadas en las siguientes cuentas de ahorro, a saber:

1) Cuenta "Easy Savings" #85016[4]447 dineros ascendentes a $24,042.60.

Número Identificador

SEN2025_____

2) Cuenta "Easy Savings" #850167681 dineros ascendientes a $4,892.41.
3) Cuenta "Golden Savings" #2150005693 dineros ascendientes a $27,641.68.[1]

En síntesis, imputan a FirstBank viabilizar -de forma negligente- la transferencia y/o sustracción de bienes en favor de terceros que no eran depositantes ni titulares legítimos de los dineros depositados.

En su alegación responsiva, FirstBank negó las alegaciones. En particular, destacó que las apelantes no habían solicitado al apelado retiro alguno de los fondos, ni reembolso de estos. Expuso que, las cuentas no están congeladas y que no fue alertado sobre la alegada muerte del señor Lorenzo Cruz Ibarra. Sostuvo que, la causa de acción está prescrita porque las transacciones ocurrieron entre diciembre de 2020 y febrero de 2021, sin que se realizara reclamación alguna a FirstBank dentro del término de sesenta (60) días de haber recibido los estados de cuenta.

Superadas las incidencias procesales iniciales que no resultan necesarias pormenorizar, FirstBank presentó una *Moción de Sentencia Sumaria.*[2] En aras de sostener su solicitud de desestimación propuso 19 hechos que, a su entender, no están en controversia. En esencia adujo que, según el *Acuerdo de Cuentas de Depósito*, las apelantes tenían 60 días desde que el banco envíe el estado de cuenta para realizar reclamaciones. Agregó que, la omisión de notificar el alegado error resulta en negligencia atribuible a las apelantes. Por ello, arguyó que no hay alegación que justifique un remedio en su contra.

---

[1] Apéndice, pág. 1

[2] Apéndice, págs. 13-130. Con su petitorio, incluyó los siguientes documentos: Anejo 1-Estados de cuenta número 850164447; Anejo 2- Estados de Cuenta número 850167681; Anejo 3- Estados de Cuenta 2150005693; Anejo 4-Acuerdo de Cuentas de Depósito; Anejo 5-Hoja de reclamación en la cuenta número 2150005693; Anejo 6-Carta emitida por FirstBank del 18 de octubre de 2021; Anejo 7-Reclamación de cargos por servicio de Sylvia Ramírez Cebollero; Anejo 8-Carta emitida por FirstBank del 18 de octubre de 2021; Anejo 9-Carta suscrita por el Lic. Emilio F. Solar del 12 de diciembre de 2021; Anejo 10-Contestaciones a Interrogatorios suscrita por Sylvia Ramírez Cebollero.

Las apelantes se opusieron al referido petitorio sumario.[3] En esencia argumentaron que, la controversia medular que impide la adjudicación por la vía sumaria versa sobre las fechas de envío de los estados de cuenta por correo ordinario y la declaración de las apelantes de no haber recibido los mismos. Ello, con el fin de identificar el inicio del término prescriptivo que dispone la Ley Núm. 208-1995, conocida como la Ley de Transferencias Comerciales de Puerto Rico, 19 LPRA sec. 401 *et seq.* A modo persuasivo, citan lo resuelto por un panel hermano en *Banco Popular de Puerto Rico v. García Medina,* recurso número KLAN201201816, a los fines de establecer que el término para reclamar incongruencias en una cuenta es de un (1) año, a partir de la fecha del recibo del estado de cuenta.[4]

Examinadas las posturas de las partes, el TPI notificó un primer dictamen, mediante el cual, denegó el petitorio sumario de FirstBank. Sin embargo, en atención a la *Solicitud de Reconsideración a Resolución* que instó FirstBank, el 14 de junio de 2024, a la cual se opusieron las apelantes, el TPI reconsideró su dictamen y, en su lugar, emitió la *Sentencia* apelada. En esta consignó los siguientes 21 hechos:

1. Lorenzo Cruz Ibarra, Ana Cruz Ramírez y Ana Meléndez Cruz tienen la cuenta número 850164447 en FirstBank Puerto Rico.
2. El Sr. Lorenzo Cruz Ibarra, Ana Cruz Ramírez y Sylvia Ramírez Cebollero tienen la cuenta número 850167681 en FirstBank.
3. El Sr. Lorenzo Cruz Ibarra y Sylvia Ramírez Cebollero tienen la cuenta número 2150005693 en FirstBank.
4. Las cuentas se rigen por el Acuerdo de Cuentas de Depósito[.]
5. Todas las cuentas mencionadas en el hecho 1, 2 y 3 son cuentas conjuntas, según definido por el Acuerdo de Cuentas de Depósito. El Acuerdo establece en su cláusula 5 (b) titulada Cuenta Individual/Cuenta Conjunta lo siguiente:

---

[3] Apéndice, págs. 131-142.

[4] Surge del referido recurso que, en dicho caso, el foro primario falló a favor del banco apelado bajo el fundamento de que logró demostrar la existencia de una deuda vencida, líquida y exigible. Si bien es cierto que el panel hermano de esta Curia citó la Sección 3-406 de la Ley Núm. 208-1995, *supra,* el plazo dispuesto en esa sección no fue aplicado al resolver la controversia. De hecho, el panel hermano confirmó al foro primario e hizo constar que la parte apelante no impugnó las transacciones que obraban en los estados de cuenta de conformidad a la legislación aplicable.

       b. Cuenta Conjunta: Cuentas cuyo titular se compone de dos o más titulares y cualquiera de ellos puede disponer de los fondos con su sola firma o con la firma de uno de los titulares.

6. El Acuerdo de Cuentas establece el proceso para realizar reclamaciones al banco por transferencias electrónicas no autorizadas.

7. El Acuerdo de Cuentas establece en su sección IV titulada Transferencias Electrónicas de Fondos – en el párrafo intitulado A.5 lo siguiente:

> Transferencias no autorizadas. Si usted entiende que alguna de sus Tarjetas de Débito ha sido robada o está perdida o que alguien ha transferido o podría transferir dinero de alguna de sus Cuentas sin su autorización, refiérase al párrafo de Información General en esta sección para instrucciones sobre qué hacer.

8. En cuanto a las reclamaciones, el Acuerdo de Cuentas establece en su página 35, en el inciso D, titulado Información General:

> 4. En caso de errores o dudas acerca de sus transferencias electrónicas. Si usted piensa que su estado de Cuenta o récord de transferencia está incorrecto o si necesita más información acerca de éstos, llame a nuestro FirstLine Solutions Center o escríbanos lo antes posible. El número de teléfono de nuestro FirstLine Solutions Center y nuestra dirección aparecen al final de este Acuerdo y en su estado de Cuenta mensual.
>
> **Debe comunicar su reclamación al Banco no más tarde de 60 días después de que le enviemos el estado de Cuenta en el que el problema o error apareció por primera vez.**
>
> **a. Indíquenos su nombre y el (los) número(s) de Cuenta(s) objeto del error o problema.**
>
> **b. Describa el error o la transferencia motivo de su duda y explique con la mayor claridad posible la razón por la cual usted piensa que existe un error o por qué usted necesita más información.**
>
> **c. Indíquenos la cantidad en dólares del posible error. (Énfasis nuestro.)**

9. El 14 de octubre de 2021, la Sra. Sylvia Ramírez Cebollero realizó una reclamación sobre las siguientes transacciones en su cuenta número 2150005693:

    a. 1/06/2021 $4,950.00
    b. 1/07/2021 $4,000.00
    c. 1/14/2021 $600.00
    d. 1/19/2021 $5,000.00
    e. 1/20/2021 $2,000.00
    f. 1/25/2021 $2,000.00
    g. 1/29/2021 $1,000.00
    h. 03/09/2021 $80.00
    i. 04/21/2021 $250.00

10. El 18 de octubre de 2021, FirstBank envió a la Sra. Sylvia Ramírez Cebollero el resultado de la investigación de su reclamación indicándole que no procede su reclamación de error respecto a las transferencias de Digital Banking detalladas y que la evidencia demuestra que son transferencias entre cuentas entrelazadas en común y similitud de nombre de Lorenzo Cruz Ibarra.

11. Para esa misma fecha también se reclamaron varios cargos por servicio.

12. FirstBank contestó el resultado de su investigación y explicó que los cargos proceden según el tipo de cuenta, por la cuenta no cumplir con el balance mínimo de $5,000.00.

13. El 12 de diciembre de 2021, el representante legal de la parte demandante remitió una misiva a FirstBank en la cual reclama la suma de $24,042.60 de una cuenta que termina en 6[4]447, $4,892.41 de la cuenta que termina en 7681 y $27,641.68 de la cuenta que termina en 5693.

14. Dicha reclamación no contiene una descripción o desglose de las transacciones que alegan fueron erróneas, ni las fechas de estas.

15. El 8 de septiembre de 2023, la parte demandante detalló por primera vez las transacciones a las que hace referencia en su reclamación, en la Contestación a Primer Pliego de Interrogatorios dirigida a FirstBank el 8 de septiembre de 2023.

16. La fecha de las alegadas transacciones no autorizadas ocurrió de diciembre de 2020 a junio de 2021.

17. Las transferencias o sustracciones desde la Cuenta Easy Savings #850167681 a nombre de Lorenzo Cruz Ibarra, Ana Amelia Cruz Ramírez y Sylvia Ramírez Cebollero a la cuenta Easy Savings #8506[4]447 a nombre de Lorenzo Cruz Ibarra, Ana Amelia Cruz Ramírez y Ana Alejandra Meléndez Cruz que se reclaman son:
    1/13/21: $5,000.00
    2/11/21: $300.00
    3/9/21: $54.00

18. Las transferencias o sustracciones desde la cuenta Golden Savings #2150005693 a nombre de Lorenzo Cruz Ibarra y Sylvia Ramírez Cebollero a la cuenta Easy Savings #8506[4]447 a nombre de Lorenzo Cruz Ibarra, Ana Amelia Cruz Ramírez y Ana Alejandra Meléndez Cruz que se reclaman son:
    12/22/20: $150.00
    12/24/20: $9,000.00
    12/28/20: $8,996.00
    1/6/21: $4,950.00
    1/7/21: $4,000.00
    1/14/21: $600.00
    1/19/21: $5,000.00
    1/20/21: $2,000.00
    1/25/21: $2,000.00
    1/29/21: $1,000.00
    3/9/21: $80.00

19. Las transferencias o sustracciones desde la Cuenta Easy Savings #8506[4]447 a nombre de Lorenzo Cruz Ibarra, Ana Amelia Cruz Ramírez y Ana Alejandra Meléndez Cruz a terceros que se reclaman son:
    12/21/20: $9,875.25 a Citi Card
    12/23/20: $9,545.00 a Citi Card
    12/28/20: $4,705.00 a Citi Card
    12/28/20: $9,925.25 a Citi Card
    1/5/21: $900.00 a Venmo
    1/7/21: $4,000.00 a American Airlines Federal Credit Union (AAFCU)
    1/8/21: $600.00 a Venmo
    1/8/21: $4,980.00 a AAFCU
    1/11/21: $(20.00) a AAFCU.
    1/12/21: $ 900.00 a Venmo
    1/15/21: $600.00 a Venmo
    1/15/21: $4,998.00 a AAFCU
    1/19/21: $300.00 a Venmo
    1/22/21: $500.00 a Venmo
    1/26/21: $350.00 a Citi Card
    1/27/21: $70.00 a Citi Card
    1/27/21: $900.00 a Venmo
    1/29/21: $500.00 a Venmo
    2/3/21: $900.00 a Venmo
    2/8/21: $600.00 a Venmo
    2/11/21: $400.00 a Venmo

> 2/11/21: $500.00 a Venmo
> 2/16/21: $300.00 a Venmo
> 2/16/21: $300.00 a Venmo
> 2/19/21: $300.00 a Venmo
> 3/10/21: $250.00 a Venmo
> 6/21/21: $30.00 a Venmo
> Totales: Citi Card: $34,470.50
> AAFCU: $13,958.00
> Venmo: $ 7,880.00

20. Los estados de cuenta de las cuentas 85016[4]447, 850167681, y 2150005693 fueron notificados por correo regular a la dirección que surge en el estado de cuenta Urb. Park GDNS, San Juan, PR 00926-2246.

21. Los estados de cuenta de las cuentas 85016[4]447, 850167681, y 2150005693 fueron impresos en la fecha que surge en el "Statement Date" de cada estado de cuenta y enviado por correo regular el próximo día.[5] (Énfasis suprimido.)

Tras citar las bases jurídicas sobre sentencia sumarias, contratos de adhesión, la Ley de Transacciones Comerciales y su jurisprudencia interpretativa, el foro primario concluyó lo siguiente:

> [...]
> En este caso, los demandantes aceptaron el contenido del Acuerdo de Cuentas de Depósito y estos libre y voluntariamente aceptaron abrir las cuentas de referencia bajo el contrato de adhesión y con pleno conocimiento de sus cláusulas y condiciones, las cuales expresamente aludían a los términos disponibles por la parte demandante para notificar y reclamar errores reflejados en los estados de cuenta. No procede interpretar las cláusulas de modo distinto a lo establecido. No habiendo cláusulas ambiguas y oscuras no procede interpretar las cláusulas a favor de una de las partes, si no, en el sentido literal de las mismas.
>
> Siendo la última transacción reclamada en la cuenta 850167681 del 9 de marzo de 2021 y el estado de cuenta donde se refleja la transacción tiene fecha del 31 de [marzo] de 2021, se presume el mismo fue enviado el 1 de abril de 2021 a la parte demandante. En cuanto a la cuenta 2150005693 la última transacción reclamada fue del 9 de marzo de 2021, y el estado de cuenta donde se refleja la transacción tiene fecha del 31 de marzo de 2021, por lo que se presume el mismo fue enviado el 1 de abril de 2021 a la parte demandante. Por último, la cuenta 8506[4]447, donde la última transacción reclamada fue el [sic] realizada el 21 de junio de 2021, con fecha del estado de cuenta del 30 de junio de 2021, se presume enviado el 1 de julio de 2021.
>
> Al haber sido reducido por las partes mediante un Acuerdo de Cuentas de Depósito el término para reclamar al banco que tenía la parte demandante a 60 días desde el envío de los estados de cuenta, el mismo venció. Por ende, la parte demandante no puede ahora reclamar al banco por transacciones no autorizadas, al transcurrir el término luego de recibir los estados de cuenta mensualmente. La parte demandante tenía hasta el 31 de agosto de 2021 para realizar reclamación al banco sobre la última transacción no autorizada que refleja sus estados de cuenta. Nos vemos forzados a concluir que la reclamación del demandante prescribió por el paso de los términos contractuales acordados por las partes.

---

[5] Apéndice, págs.209-212.

[...][6]

Inconforme, las apelantes acuden ante esta Curia y señalan lo siguiente:

> Erró el Honorable TPI al dictar sentencia sumaria desestimatoria porque existen genuinas controversias de hecho y derecho, en particular sobre el aspecto fáctico del recibo de estados bancarios como evento activador del término para reclamar los dineros extraídos de sus cuentas, y en el ámbito jurídico en torno al término aplicable para reclamar entre sesenta (60) días de un Acuerdo de Cuenta de Depósito o aquel de un (1) año de la Ley de Transacciones Comerciales, 19 LPRA sec. 401 *et seq.*

El 21 de enero de 2025, FirstBank acreditó su *Alegato en Oposición*, por lo que, con el beneficio de la comparecencia de las partes procedemos a resolver.

**II.**

**A. Sentencia Sumaria**

El mecanismo de sentencia sumaria está codificado en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36. *Jiménez Soto y otros v. Carolina Catering Corp. y otros,* 2025 TSPR 3, resuelto el 14 de enero de 2025. Cabe señalar que, esta herramienta permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe duda sobre los hechos esenciales y se cuenta con la evidencia necesaria, de manera que, solo resta aplicar el derecho. *Íd.*; *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, 2025 TSPR 6, resuelto el 15 de enero de 2025. Este cauce sumario -invocable tanto por la parte reclamante como por quien se defiende de una reclamación- resulta beneficioso para el tribunal y para las partes, pues agiliza el proceso judicial mientras, simultáneamente, provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Jiménez Soto y otros v. Carolina Catering Corp. y otros,* supra.

---

[6] Apéndice, pág. 221.

Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, supra. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* 2025 TSPR 1, resuelto el 7 de enero de 2025.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023. Es un hecho medular el que puede afectar el resultado de la reclamación, conforme al derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Cabe destacar que, la parte que desafía una moción de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *Íd.*; *León Torres v. Rivera Lebrón,* 204 DPR 20, 43 (2020). Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *León Torres v. Rivera Lebrón,* supra. A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia

sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Cabe puntualizar que, a tenor de la normativa aplicable, si la parte promovida opta por no oponerse al petitorio sumario, conforme a las Reglas de Procedimiento Civil, *supra,* se arriesga a que el TPI dicte sentencia en su contra, **si procede en derecho**. Véase, Regla 36.3(c) de las Reglas de Procedimiento Civil, *supra; León Torres v. Rivera Lebrón,* supra. Entiéndase que, el mero hecho de que la parte promovida no presente una oposición o, de presentarla, no cumple con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* ello no obliga al juzgador de los hechos a automáticamente disponer del asunto por la vía sumaria. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432 (2013). Lo antes está sujeto a la sana discreción del Tribunal. *Íd.*, págs. 432-433.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o

credibilidad. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47, resuelto el 8 de mayo de 2024. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos

materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

**B. Derecho contractual y el contrato de adhesión**

En nuestra jurisdicción rige el principio de la autonomía contractual o *pacta sunt servanda.* Artículo 54 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5421; *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47, resuelto el 8 de mayo de 2024. De conformidad, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Artículo 1232 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9753; *Betancourt González v. Pastrana Santiago,* 200 DPR 169, 182 (2018). De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento y, desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1237 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9771.

En vista de ello, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Artículo 354 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6342; *Marcial v. Tomé,* 144 DPR 522, 536 (1997). Es decir, los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009).

En lo pertinente, los contratos con cláusulas generales, también conocidos como contratos de adhesión, son aquellos cuyo contenido son obra de una sola de las partes de tal forma que el otro contrayente no interviene en la redacción del contenido contractual. Artículo 1247 del Código Civil de 2020, 31 LPRA sec. 9801. Debido a que el aceptante está precisado a aceptar un contenido predispuesto, toda ambigüedad debe interpretarse en sentido desfavorable a la parte que las redacta. *San Luis Center Apts, et al. v. Triple-S,* 208 DPR 824 (2022). En ausencia de ambigüedades o de diversas interpretaciones, los términos, condiciones y exclusiones claras y específicas deben hacerse valer conforme a la voluntad de las partes contratantes. *Jiménez López et al. v. SIMED,* 180 DPR 1 (2010).

### C. Ley Núm. 208-1995

La Ley de Transacciones Comerciales de Puerto Rico reglamenta los instrumentos negociables, los depósitos y cobros bancarios y las relaciones entre los bancos y sus clientes.[7] En el inciso (c) de la Sección 3-406 de la Ley Núm. 208-1995, 19 LPRA sec. 956(c), impone el deber a los clientes de examinar cada estado de cuenta con razonable prontitud a los fines de identificar cualquier pago no autorizado, en cuyo caso, habrá de notificarlo al banco de forma diligente. Sobre este particular dispone:

> (c) Si el banco envía o le facilita un estado de cuenta o los efectos como se contempla en la subsección (a), el cliente tiene que examinar el estado o los efectos con razonable prontitud para determinar si algún pago no estaba autorizado por razón de una alteración o porque la firma no estaba autorizada. Si a base del estado o los efectos provistos, el cliente debiera haber descubierto el pago no autorizado, tendrá la obligación de notificar con prontitud los hechos pertinentes al banco.

Con respecto al término aplicable para reclamar los efectos de una firma no autorizada o de un cheque alterado, el inciso (f) de la Sección 3-406 de la Ley Núm. 208-1995, 19 LPRA sec. 956(f),

---

[7] Exposición de Motivos de la Ley Núm. 208-1995.

concede un (1) año a los clientes que interesen reclamar a un banco los efectos de una firma no autorizada, y citamos:

> (f) Independientemente del cuidado o de la falta de cuidado del cliente o del banco, el cliente estará impedido de reclamar por una firma no autorizada o una alteración del efecto si no ha avisado de ello dentro de un año desde que los efectos o el estado de cuenta del banco le fueron facilitados (subsección (a)). En caso de impedimento bajo esta subsección, el banco pagador tampoco podrá recobrar por violación de garantía bajo la Sección 3-208 respecto a la firma no autorizada o alteración a la cual aplica el impedimento.

No obstante, lo anterior, la Sección 1-102(3) de la Ley Núm. 208-1995, 19 LPRA sec. 401(3), permite a las partes variar los términos de esta ley, salvo disposición en contrario.

### III.

Las apelantes cuestionan como único error la desestimación de su causa, por entender que, existen controversias genuinas de hecho y de derecho que impedían al foro primario disponer de este asunto por la vía sumaria. En particular, alegan no haber recibido los estados de cuenta bancarios que marcan el inicio del término para reclamar los dineros extraídos de las cuentas bancarias objeto de este pleito. Además, impugnan la determinación del TPI de aplicar a estos hechos el término prescriptivo de sesenta (60) días que emana del *Acuerdo de Cuenta de Depósito,* en lugar del plazo que establece la ley especial que rige los instrumentos negociables, la Ley Núm. 208-1995, *supra.* Por ello, solicitan que dejemos sin efecto el dictamen apelado.

Al oponerse al recurso, el apelado discute que, en octubre de 2021, los apelantes instaron una reclamación en la cual cuestionaron ciertas transacciones, y con ello, confirmaron haber recibido los estados de cuenta en cuestión. Con respecto al término aplicable para reclamar alegados errores o transacciones no autorizadas, el apelado sostiene que son sesenta (60) días, por virtud del *Acuerdo de Cuentas de Depósito* habido entre las partes.

Es norma reiterada que, al revisar una solicitud de sentencia sumaria, los foros apelativos nos encontramos en igual posición que el foro sentenciador. De manera que, nos corresponde primeramente evaluar si las partes dieron cumplimiento a los requisitos de forma que establece la Regla 36 de las Reglas de Procedimiento Civil, *supra.* Según la norma aplicable, quien se opone a que se declare con lugar una solicitud de sentencia sumaria viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente. Así, en su oposición, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, *supra.*

Al evaluar la *Moción de Sentencia Sumaria* de FirstBank y la correspondiente oposición de las apelantes constatamos que ambas partes cumplieron con las formalidades de la Regla 36 de Procedimiento Civil, *supra.* Superado lo anterior, procedemos a examinar *de novo* los méritos del petitorio sumario, producto de lo cual, dictaminamos que el TPI no incidió al disponer que no existen hechos medulares en controversia que le impidieran resolver la presente causa por la vía sumaria.

De nuestro análisis *de novo* del petitorio sumario del apelado y de la réplica de las apelantes observamos que, FirstBank sustentó su solicitud esencialmente en las disposiciones del *Acuerdo de Cuentas de Depósito.* En particular, sobre los términos y requerimientos que regulan el proceso para cuestionar errores o dudas sobre transferencias electrónicas de fondos.

De otra parte, las apelantes admitieron como hechos incontrovertidos que estas poseen las cuentas números 850164447, 850167681 y 2150005693 en FirstBank.[8] A pesar de que, las

---

[8] Apéndice, págs. 24-70.

apelantes inicialmente adujeron nunca haber recibido los estados de cuenta correspondientes a los meses entre diciembre de 2020 y junio de 2021, más adelante, en su oposición al petitorio sumario, clarificaron que no los obtuvieron coetáneo a la fecha de su emisión, sino el 28 de marzo de 2023.

A los fines de evaluar el referido argumento atinente al recibo de los estados de cuentas, revisamos la declaración jurada de la señora Ramírez Cebollero en la cual hizo constar que, el 14 de octubre de 2021, efectuó reclamaciones telefónicamente a FirstBank sobre cargos por servicios y transferencias.[9] Surge del expediente que, la referida reclamación se limitó a la cuenta número 2150005693.[10] En su declaración aseguró no tener ni haber tenido ante sí los estados de cuenta para el periodo entre noviembre de 2020 y octubre de 2021. Sin embargo, puntualizó que las cuantías reclamadas son las desglosadas en los Anejos 5 y 7 del petitorio sumario de FirstBank.[11]

De otra parte, la señora Cruz Ramírez declaró bajo juramento que cuando visitó la sucursal, el 6 de octubre de 2021,[12] para efectuar un depósito, indagó sobre el balance de las cuentas números 850164447 y 850167681. Expuso que, en ese momento es que tuvo conocimiento de unas posibles transacciones sospechosas en tales cuentas. Relató, además, que, en respuesta a sus requerimientos, el apelado le entregó unas páginas impresas de las actividades en las cuentas números 850164447 y 850167681, las cuales no eran los estados de cuenta propiamente. Sin embargo, las apelantes no presentaron en evidencia tales documentos. Cabe puntualizar que, los Anejos 5 y 7 a los cuales nos referimos en el

---

[9] Apéndice, págs. 188-189.
[10] Apéndice, págs. 119 y 121.
[11] Apéndice, págs. 119, 121 y 188.
[12] Según la declaración jurada, su visita a la sucursal fue el 4 de octubre de 2024. Sin embargo, constatamos del expediente que el año debió leer 2021. Apéndice, págs. 180 y 190.

párrafo anterior, corresponden únicamente a la cuenta número 2150005693.

Según expusieron las apelantes al oponerse al petitorio sumario, no es hasta el 28 de marzo de 2023 que presuntamente recibieron los estados de cuentas que detallan las transacciones y los cargos objeto de este pleito.[13] Coincidimos con el foro primario en que, las apelantes recibieron o debieron haber recibido mensualmente los estados de cuenta que contienen las transacciones reclamadas. No resulta persuasivo o probable que las apelantes pudiesen desglosar, para cada una de las tres cuentas, unas transacciones y cargos por servicio, y adjudicarles una cuantía específica tan precisa a la real, sin el beneficio de los estados de cuenta.

Añádase a lo anterior que, por virtud del inciso (23) de la Regla 304 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 304, se presume que los estados de cuenta remitidos a la dirección provista por los titulares de las cuentas fueron recibidos, en ausencia de prueba en contrario. La referida presunción lee: "[u]na carta dirigida y cursada por correo debidamente, fue recibida en su oportunidad."

Con respecto al término aplicable para reclamar posibles errores en transacciones electrónicas, las apelantes argumentan que debe aplicar el término de un (1) año que establece la Sección 3-406(f) de la Ley Núm. 208-1995, *supra*. Según FirstBank, procede aplicar el término de sesenta (60) días que dispone el *Acuerdo de Cuentas de Depósito.*

Al evaluar el texto de la Sección 3-406(f) de la Ley Núm. 208-1995, *supra,* resulta evidente que el término de un (1) año allí dispuesto aplica a reclamaciones que envuelven una firma no autorizada o una alteración de efectos (cheques). En la causa de epígrafe, la reclamación de las apelantes es sobre transferencias

---

[13] Apéndice, pág. 140.

electrónicas, por lo cual la referida disposición no aplica a estos hechos.

A lo antes se añade que, mediante la apertura de las cuentas bancarias objeto de este pleito en FirstBank, los titulares de tales cuentas voluntariamente aceptaron las disposiciones del *Acuerdo de Cuentas de Depósito.* De manera que, rige entre las partes el término de sesenta (60) días para reclamar errores o efectuar preguntas acerca de unas transferencias electrónicas de fondos. Si bien es cierto que el *Acuerdo de Cuentas de Depósito* constituye un contrato de adhesión, sus cláusulas establecen la voluntad de las partes y deben observarse, en ausencia de ambigüedades o de diversas interpretaciones. *Jiménez López et al. v. SIMED,* supra.

Surge del expediente que, las apelantes reclaman errores en las transferencias electrónicas realizadas entre el 21 de diciembre de 2020 y el 21 de junio de 2021.[14] Constatamos que las referidas transacciones obran en los estados de cuenta fechados desde el 31 de diciembre de 2020 hasta el 30 de junio de 2021.[15] Conforme lo estableció en su declaración jurada, el señor Arnold Rivera Agosto, custodio del programa FIS EGistic en FirstBank, cada estado de cuenta es enviado mensualmente, por correo regular, a la dirección provista por los titulares de las cuentas, al siguiente día de la fecha establecida como "statement date".[16] De conformidad, los estados de cuentas objeto de este pleito fueron enviados mensualmente entre el 1 de enero de 2021 y el 1 de julio de 2021. De manera que, los sesenta (60) días para las apelantes reclamar cualquier error en las respectivas transferencias electrónicas vencieron entre principios del mes de marzo de 2021 y finales de agosto de 2021. Sin embargo, no es hasta el mes de octubre de 2021 que las apelantes instaron su primera reclamación. En virtud de la normativa antes esbozada,

---

[14] Apéndice, págs. 126-127.
[15] Apéndice, págs. 24-70.
[16] Apéndice, pág. 174.

y en ausencia de controversias medulares, el foro primario no incidió al concluir que, las apelantes instaron su reclamo sobre las transferencias electrónicas fuera del término que provee el *Acuerdo de Cuentas de Depósito.*

Dentro del marco jurídico antes enunciado y de conformidad con la facultad que nos confirió el Tribunal Supremo en *Meléndez González et al. v. M. Cuebas,* supra, reconocemos que el foro primario no incidió al declarar Ha Lugar el petitorio sumario de FirstBank y, en su consecuencia, al desestimar con perjuicio la *Demanda* de epígrafe. El error señalado no se cometió.

**IV.**

Por las razones que anteceden, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones